Brent E. Johnson (7558)
bjohnson@hollandhart.com
Rebecca A. Ryon (11761)
raryon@hollandhart.com
HOLLAND & HART LLP
222 South Main, Suite 2200
Salt Lake City, UT  84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRAEGER PELLET GRILLS, LLC, a Florida limited liability company,<br><br>   Plaintiff,<br><br>v.<br><br>JARED OLSEN, an individual, and VITA-MIX CORPORATION, an Ohio corporation,<br><br>   Defendants. | **COMPLAINT**<br><br>**[JURY DEMANDED]**<br><br><br><br>Civil No.  2:12-cv-00482-BCW<br><br>Judge Brooke C. Wells |

Plaintiff Traeger Grills, LLC, by and through its counsel of record Holland & Hart LLP, for its claims for relief against Defendants Jared Olsen and Vita-Mix Corporation, alleges as follows:

### PARTIES

1. Plaintiff Traeger Grills, LLC ("Traeger") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Wilsonville, Oregon.

2.      Defendant Jared Olsen ("Olsen") is an individual who is, on information and belief, a citizen of the State of Utah.  Until April 20, 2012, Olsen was Head of Logistics for Traeger.  Prior to being the Head of Logistics for Traeger, Olsen served as Sales Trainer and Regional Sales Manager for Traeger.

3.      Vita-Mix Corporation ("Vita-Mix") is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

<u>**JURISDICTION AND VENUE**</u>

4.      This is an action to enforce a confidentiality agreement executed by Olsen whereby Olsen agreed that he would not use or divulge Traeger's trade secrets and to prevent Vita-Mix from misappropriating Traeger's confidential and proprietary sales and marketing protocols.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court has personal jurisdiction over defendants because, on information and belief, Olsen resides within this judicial district, events giving rise to Traeger's claims occurred within this judicial district, and Vita-Mix has transacted business in Utah and has caused damage to Traeger in Utah.

<u>**GENERAL ALLEGATIONS**</u>

A.      **Traeger's Business**

7.      Traeger manufactures specialized wood pellet grills that use an electric igniter rod, in the place of natural gas or propane, to heat wood pellets made of hickory, mesquite, cherry, and other specialty woods, that are deposited into a "firepot," thereby achieving unsurpassed temperature control.

8.     Traeger sells and markets its grills, wood pellets, and other associated products, through, among other methods, live demonstrations or "roadshows" that take place at wholesale stores, such as Costco Wholesale, Inc, regional fairs, home shows, and similar venues.

9.     Sales at roadshows are a very significant component of Traeger's success, accounting for over one-third of Traeger's annual revenue.

10.    Traeger competes for roadshow opportunities and limited floor space at wholesale stores with other companies that also sell their products through this retailing method, including Vita-Mix.

11.    Upon information and belief, Vita-Mix also realizes a significant portion of its sales through roadshows.

12.    Because the floor space allocated to roadshows at most venues is limited, competition among market participants for the available space is fierce.

13.    Additionally, certain roadshow venues receive a percentage of the gross sales generated by the roadshow and, therefore, allocate floor space to those companies with the highest sales.

14.    To increase its roadshow sales and improve its competitive position vis-à-vis other companies using the same retailing method, Traeger developed a confidential and proprietary computer-based sales and marketing protocol (the "Marketing Protocol") that encompasses, among other things, the recruiting and training of sales people and demonstrators; metrics for evaluating and ranking sales people and demonstrators and assigning particular venues based on those metrics; and Traeger's broader marketing and retails sales plans.

15.     The Traeger Marketing Protocol is highly complex and took over a year to develop and refine.

16.     As a result, it would take someone not privy to the Marketing Protocol by virtue of their employment with Traeger significant time, effort, and money to duplicate, if even possible.

17.     Traeger invested more than $1 million into the development of the Marketing Protocol.

18.     To protect its substantial investment, Traeger requires its employees that have access to the Marketing Protocol to sign confidentiality agreements that prohibit the disclosure or misappropriation of the Marketing Protocol.

**B.     Olsen's Employment with Traeger**

19.     Traeger hired Olsen on September 15, 2010, as a Regional Sales Trainer at Traeger's Pleasant Grove, Utah location.

20.     During his employ with Traeger, Olsen held the positions of Regional Sales Manager, Sales Trainer, and Head of Logistics.

21.     As a condition of his employment with Traeger, Olsen was required to execute a "Non Compete, Non-Solicitation, Non-Disparagement & Confidentiality Agreement" (the "Confidentiality Agreement").

22.     Olsen executed the Confidentiality Agreement on May 2, 2011, a true and correct copy of which is attached hereto as Exhibit A.

23.     In executing the Confidentiality Agreement, Olsen covenanted not "to disclose or disseminate, or attempt to disclose or disseminate, Confidential Information concerning [Traeger]." *See* Confidentiality Agreement, Section 3(B).

24.     The Confidentiality Agreement defines "Confidential Information" to include, among other things, "proprietary information, which includes, without limitation, . . . operational information, client identities and all client information, and information regarding marketing and business practice plans and procedures, current or proposed . . . ." *Confidentiality Agreement, Section 3(B)(1)*.

25.     Olsen also agreed that he would not use or divulge in any way Traeger's trade secrets and would immediately return any information or records related to them to Traeger upon leaving its employment.  *See* Confidentiality Agreement, Section 4.

26.     The Marketing Protocol comes within the definition of "Confidential Information" set forth in the Confidential Information and Traeger has a legitimate business interest in protecting its Confidential Information and competitive standing in the marketplace.

27.     As a Sales Trainer, Regional Sales Manager, and Head of Logistics, Olson had full access to Traeger's Marketing Protocol and made regular use of the Marketing Protocol in the course of his employment.

28.     As Head of Logistics and Regional Sales Manager, Olson also participated in meetings of upper level management where sales methods, marketing strategies, and Traeger's financial performance were discussed.

**C.     Olsen's Departure from Traeger to Work for Vita-Mix**

29.     On April 20, 2012, Olsen voluntarily terminated his employment with Traeger. Olsen has gone to work for Vita-Mix, Traeger's competitor in the roadshow marketplace.

30.     Olsen represented to Traeger that he had been recruited by Vita-Mix to develop a new "in-home" sales and marketing plan.

5

31.     Upon information and belief, Vita-Mix has, at best, limited plans to develop an "in-home" sales approach; rather, Vita-Mix hired Olsen because of Olsen's intricate knowledge of Traeger's proprietary and confidential Marketing Protocol based upon the following:

a.      upon information and belief, Olsen was employed by Vita-Mix as a salesman immediately prior to joining Traeger as a Regional Sales Trainer;

b.      upon information and belief, Vita-Mix has never been involved in the "in-home" sales market;

c.      upon information and belief, Olsen has no relevant experience in the "in-home" sales market; and

d.      upon information and belief, the compensation offered to Olsen by Vita-Mix is far in excess of what his qualifications in the "in-home" sales area would merit and far in excess of what he was earning as a Vita-Mix salesman before Olsen became a Traeger Regional Sales Trainer.

32.     Upon information and belief, Olsen's actual responsibilities at Vita-Mix include involvement in the supervision, training, and evaluation of sales people that demonstrate Vita-Mix products at roadshows.

33.     Upon information and belief, because of his extensive knowledge of the Marketing Protocol and the similarity of his job responsibilities at Vita-Mix to his responsibilities while in the employ of Traeger, Olsen has disclosed or relied upon or will inevitably disclose or rely upon Traeger's confidential information in his new position with Vita-Mix.

34.     The disclosure or inevitable disclosure of the Marketing Protocol in the course of Olsen's employment with Vita-Mix, will destroy Traeger's substantial investment in developing

the Marketing Protocol and the competitive advantage that Traeger realizes from the Marketing Protocol.

36. The disclosure or inevitable disclosure of the Marketing Protocol or any other confidential information by Olsen in the course of his employment with Vita-Mix would be a violation of the Confidentiality Agreement.

36. The disclosure or inevitable disclosure of the Marketing Protocol or any other confidential information by Olsen in the course of his employment with Vita-Mix, would bestow an unfair and unjustly obtained competitive advantage upon Vita-Mix.

## FIRST CAUSE OF ACTION
### (Injunctive Relief – All Defendants)

37. Traeger hereby incorporates the allegations contained in paragraphs 1 through 36 above, as if set forth in full herein.

38. Unless restrained, Defendants will misappropriate Traeger's confidential, trade secret, and proprietary information including the Marketing Protocol.

39. Unless Defendants are restrained, Traeger will suffer irreparable injury and damage.  As damages cannot completely compensate Traeger for the injury to its business, Traeger is entitled to injunctive relief against Olsen preventing him from violating the Confidentially Agreement and against Olsen and Vita-Mix to prevent the misappropriation or of Traeger's Marketing Protocol and all other confidential information.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Olsen)

40.     Traeger hereby incorporates the allegations contained in paragraphs 1 through 36 above, as if set forth in full herein.

41.     Traeger and Olsen entered into the Confidentiality Agreement more fully discussed above that prohibits Olsen from disclosing Traeger's trade secrets and proprietary information.

42.     As more fully described above, Olsen's employment with Vita-Mix has or will inevitable lead to the disclosure of Traeger's Marketing Protocol and other trade secrets of Traeger.

43.     Such disclosure will constitute a breach of the Confidentiality Agreement by Olsen.

44.     As a direct result of Olsen's breach, Traeger will suffer damages, including loss of its substantial investment in developing the Marketing Protocol and loss of the competitive advantage that Traeger realizes from the Marketing Protocol, in such an amount as will be proven at trial.

## THIRD CAUSE OF ACTION
### (Misappropriation of Trade Secrets – All Defendants)

45.     Traeger hereby incorporates the allegations contained in paragraphs 1 through 36 above, as if set forth in full herein.

46.     The Marketing Protocol falls within the definition of a trade secret and/or proprietary information as recognized at common law and by the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-2(4).

47.     Traeger has made special efforts to maintain the confidentiality of the Marketing Protocol.

48.     Traeger derives economic value from the Marketing Protocol because the information is not generally known or readily ascertainable by proper means.

49.     Upon information and belief, Olsen's job responsibilities are substantially similar to his responsibilities while in the employ of Traeger and Olsen has or will inevitably disclose or rely upon Traeger's confidential information in his new position with Vita-Mix in violation of his obligations under the Confidentiality Agreement.

50.     Traeger neither expressly nor impliedly consents to Olsen's disclosure of Traeger's confidential information.

51.     Upon information and belief, Vita-Mix hired Olsen with the knowledge that Olsen will inevitably disclose or rely upon the Marketing Protocol in order to gain a competitive advantage over its competitor Traeger or at least destroy the competitive advantage that Traeger enjoys due to the exclusivity of the Marketing Protocol.

52.     Traeger is entitled to injunctive relief enjoining Defendants from disclosing or making use of Traeger's confidential proprietary and trade secret information and preventing Defendants from obtaining a competitive advantage from the misappropriation and use of Traeger's confidential, proprietary and trade secret information.

53.     Traeger is further entitled to recover damages for Defendants' misappropriation of confidential information, including any actual losses caused, and for punitive damages in an amount equal to twice the award of any actual damages caused by Defendants' misappropriation. Such damages will be proven at trial.

54.     Traeger is also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this claim.

### FOURTH CAUSE OF ACTION
**(Interference with Contractual Relations – Vita-Mix)**

55.     Traeger hereby incorporates the allegations contained in paragraphs 1 through 36 above, as if set forth in full herein.

56.     Upon information and belief, Vita-Mix hired Olsen because of Olsen's intricate knowledge of Traeger's proprietary and confidential information including the Marketing Protocol.

57.     Upon information and belief, Vita-Mix knows or has reason to know that Olsen was constrained by contract from disclosing or relying upon Traeger's confidential information including the Marketing Protocol.

58.     Upon information and belief, Vita-Mix assigned Olsen job responsibilities substantially similar to those that Olsen performed at Traeger with the expectation that Olsen will inevitably disclose or rely upon Traeger's trade secrets including the Marketing Protocol.

59.     In taking the above actions, Vita-Mix has interfered with Traeger's right to receive the benefits to which it is entitled under the Confidentiality Agreement in an unfair, improper, and illegal manner.

60.     As a direct result of Vita-Mix's interference as alleged above, Traeger will suffer losses and damages in such an amount that will be proven at trial.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment – Vita-Mix)**

61.     Traeger hereby incorporates the allegations contained in paragraphs 1 through 36 above, as if set forth in full herein.

62.     Upon information and belief, Vita-Mix hired Olsen because of Olsen's intricate knowledge of Traeger's proprietary and confidential information including the Marketing Protocol.

63.     The actual or inevitable disclosure of the Marketing Protocol or any other confidential information by Olsen in the course of his employment with Vita-Mix, would bestow an unfair and unjustly obtained competitive advantage upon Vita-Mix.

64.     It would inequitable under the circumstances to allow Vita-Mix to benefit from Olsen's inevitable disclosure of the Marketing Protocol without compensating Traeger for the damage to its business interests resulting therefrom.

65.     Traeger is entitled to damages in the form of restitution from Vita-Mix for the benefit unjustly conferred on Vita-Mix.  Such damages will be proven at trial.

**JURY DEMAND**

Traeger hereby demands a jury for the resolution of its claims; to the extent those claims are not resolved as a matter of law in favor of Traeger.

**PRAYER FOR RELIEF**

WHEREFORE, Traeger prays for relief as follows:

1.      For injunctive relief restraining Olsen from violating the Confidentiality

Agreement and restraining Defendants' from misappropriating Traeger's trade secret, proprietary

and confidential information;

2.      For damages caused by Olsen's breach of contract;

3.      For damages caused by Defendants' misappropriation of Traeger's trade secrets;

4.      For damages caused by Vita-Mix's interference with Traeger's contractual

relations;

5.      For restitution from Vita-Mix for the benefit unjustly conferred on Vita-Mix;

6.      For punitive damages in an amount sufficient to deter such conduct in the future;

7.      For costs of suit and attorneys fees as provided by law; and

8.      For such other and further relief as the Court may deem just and proper.

Dated:  May 15, 2012.

HOLLAND & HART, LLP


/s/ Rebecca A. Ryon
          Brent E. Johnson
          Rebecca A. Ryon
          *Attorneys for Plaintiff*


Plaintiff's Address
Traeger Pellet Grills, LLC
c/o Holland & Hart LLP
222 South Main, Ste. 2200
Salt Lake City, Utah 84101


5585401_4

<u>Exhibit List</u>

Exhibit A:    Confidentiality Agreement